THE PEOPLE OF PUERTO RICO, Plaintiff and Appellant, *v.* ARMOUR FERTILIZER WORKS, Defendant and Appellee.

Nos. 6965, 6970, 6971, 6976, 6977, 6980, and 6981. Argued April 25, 1938.— Decided May 25, 1938.

R. A. Gómez, Prosecuting Attorney, and Luis Janer, Assistant Pros- ecuting Attorney, for appellant. Rafael Buscaglia for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

In these seven actions the appellee, Armour Fertilizer Works, has moved to dismiss the appeals as frivolous. The hearing of the motions was set for April 25 last. Both parties appeared. The prosecuting attorney (Fiscal) opposed the motions orally.

The violations of the Fertilizer Law, Act No. 36 of 1934 (Session Laws, p. 308), as amended by Act No. 20 of 1935 (Session Laws, p. 114), which are charged all consist in the sale, on different dates, of a certain number of tons of raw materials for fertilizer, and the filing of the declaration of such sale with the Commissioner of Agriculture and Commerce without having affixed and cancelled the internal revenue stamps of twenty cents for every ton required by law.

At the arraignment, the defendant, through its attorney, filed a motion to quash the informations for lack of facts to constitute the offense. The court took the question raised under advisement and decided it on January 27 last granting the motion to quash and rendering judgment dismissing the prosecution with costs.

Feeling aggrieved by that decision, the People, through the district attorney, appealed from the judgments. These are the appeals which this court is now requested to dismiss.

██ Section 8 of Act No. 36 of 1934 (Session Laws, p. 308), as amended by Act No. 20 of 1935 (Session Laws (2), p. 114), which is the applicable law, claimed to have been violated by the defendant, provides:

"Section 8.—Every manufacturer, importer, warehouseman, or handler of fertilizers, raw materials for fertilizers, or amendments to the soil, or an agent representing him, shall be obliged to present to the Commissioner, or to an agent or inspector of the Commissioner of Agriculture and Commerce, duly authorized by him, within the first five days of each month, a declaration according to the model prepared by the Commissioner of Agriculture and Commerce, in which shall be included the trade-marks and the number of tons or fraction thereof, of fertilizers, raw materials for fertilizers, or amend-

ments to the soil, manufactured, sold, or imported for use in Puerto Rico during the preceding month; *Provided*, That in cases of the importation of these materials or fertilizers for sale, or of their manufacture for sale in Puerto Rico, it shall be specified in detail to whom the said fertilizers, raw materials, or the amendments to soil have been sold, the amounts to each person or company, and their addresses.

"A special tax of twenty (20) cents is hereby levied for each ton or fraction thereof of the total number of tons of fertilizers manufactured, sold or imported to be used in Puerto Rico that appear in the declaration presented; and likewise, ten (10) cents for each ton or fraction of a ton of amendments to the soil that appears as manufactured, sold, or imported for use in Puerto Rico. Therefore, every manufacturer, importer, warehouseman, or handler of fertilizer, raw materials for fertilizers, or amendments to the soil, or an agent representing him shall be required to cancel internal-revenue stamps for the total amount of taxes for the fertilizers, raw materials for fertilizers, or amendments to the soil, that appear declared as sold or imported for use in Puerto Rico, and these stamps shall be affixed on the same declaration referred to in the first paragraph of this section."

The defendant maintained in the trial court and now argues before this court that since what it sold was raw materials for fertilizer, it is not obliged to pay the tax by affixing to its sales declarations and cancelling the 20-cent stamps referred to in the informations, because the law does not require the payment of any tax when the sale is of raw materials for fertilizer.

The law, which in its first paragraph refers separately to fertilizers, raw materials for fertilizers, and amendments to the soil, in levying the tax in its second paragraph provides the rate of twenty cents for every ton or fraction thereof of fertilizer and a rate of ten cents for each ton or fraction thereof of amendments to the soil. It omits all express reference to raw materials for fertilizer.

If we remember correctly, the oral argument of the prosecuting attorney to the contrary was that in fact raw materials for fertilizer are fertilizer and that therefore it is sufficient

that the Legislature, in the second paragraph of the section, used the general term *fertilizer,* to consider raw materials as covered thereby.

Perhaps the prosecuting attorney is right and raw material for fertilizer constitutes fertilizer in itself, if not in all cases at least in some. Perhaps the real intention of the Legislature was to levy the tax on such raw material also. Perhaps the construction given to the statute by the district court is unjust in practice. Such a construction may lead to evasion of payment of the tax levied on fertilizer and amendments to the soil. But none of these considerations would justify the construction of the statute suggested by the prosecuting attorney. If the intention of the Legislature was to tax raw materials for fertilizer it must be concluded that it is a case of omission which the courts cannot correct.

It is not only section 8 which deals with fertilizer, raw materials, and amendments to the soil, as separate and distinct things, but the statute also begins by separating and distinguishing them in its own title and in its first section, as follows:

"Section 1.—For the purposes of this Act, the term *commercial fertilizers* refers to every mixture of two or more *ingredients* or materials containing the nutritive elements that may be utilized by plants, such as nitrogen, phosphorus, potassium, etc., and it does not imply that said mixture is offered for sale; the term *raw materials* refers to all organic or mineral matter containing nutritive substances or elements essential to the development of plants, as for example, nitrate of soda, sulphate of potash, cotton-seed meal, dried blood, etc.; the term *amendments of the soil* refers to such substances or materials as are applied to land to improve its physical condition, or which in any other form assist in the better development of the plants cultivated on such lands so treated."

It might be maintained that the provisions at the end of the part of paragraph 2 of section 8 of the act which we have copied, that is, which require the manufacturer, etc., to cancel internal revenue stamps for the total amount of the

tax, and then list not only fertilizers and amendments to the soil but also raw materials for fertilizer, raise a favorable doubt in favor of the construction suggested by the prosecuting attorney, but the doubt is not sufficient to warrant the positive conclusion that would have to be adopted inserting the words raw materials for fertilizer in the place where the tax is levied and this is not possible, especially since we are dealing with the imposition of a tax. *Longo & Co.* v. *Treasurer*, 50 P.R.R. 153, and *P.R. Distilling Co.* v. *Treasurer of P. R.*, 32 P.R.R. 530. This is even more true where, as in this case, the failure to pay the tax is regarded as a public offense by the very statute which is being construed. See section 16 of Act No. 36 of 1934, as amended by Act No. 20 of 1935 (Session Laws (2), p. 114).

The motions must be granted and the seven appeals dismissed.